IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **CHERISE MORGAN** | § |
| *Plaintiff,* | § |
| v. | § |
| **THE TEXAS A&M UNIVERSITY SYSTEM** | § CIVIL ACTION NO. _____ |
| *Defendants* | § |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Cherise Morgan now files this Original Complaint against Defendant Texas A&M University, for discrimination and retaliation in violation of Title VII of the 1964 Civil Rights Act, as follows.

### I. PARTIES

1. Plaintiff Cherise Morgan is an individual residing in Brazos County, Texas.

2. Defendant The Texas A&M University System (herein "TAMU") is a public university system which operates the Texas A&M University in College Station, Texas. In may be served with process through its Chancellor, John Sharp, Moore/Connally Building, 7th Floor, 301 Tarrow, College Station, Texas 77840-7896.

### II. JURISDICTION AND VENUE

3. This Court has jurisdiction over this matter under 28 U.S.C. §1331, as it raises claims under the 1964 Civil Rights Act, 42 U.S.C. 2000e, *et seq.*

4. Venue is proper in the Southern District of Texas, Houston Division, because all or a substantial part of the actions complained of occurred in Brazos County, Texas.

### III. FACTS

6. Ms. Morgan was employed with TAMU for over ten years. She initially was hired for analytical services, but was moved to Cost Analysis and then to the Department of Accounting Services (DAS). In 2018, Solomon Loche, who was Financial Accountant at the Galveston campus, but performing tasks unrelated to Ms. Morgan's work, was promoted to the position of Assistant Director, a job that had not been posted. One of his first tasks was to talk to employees in the department about the nature of their positions and duties and whether they had an interest in the position to which he had been appointed. Ms. Morgan had no interest in that position, as it involved transaction processing, which was not in her career path. Although no such meeting was held with Ms. Morgan for months, there was a brief conversation in which she explained to Mr. Loche what she did and she interacted significantly with the Controller, he expressed his opinion that this was too much for her to be doing and that she should be reporting to him, even though her position had never been a direct report to the Assistant Director.

7. Although Ms. Morgan did not report to him at the time, as Assistant Director Loche made comments that marginalized and trivialized her work. While Assistant Director, Mr. Loche told Ms. Morgan that he was "surprised" that Ms. Morgan was not "married to a white man. They usually scoop you up," referring to "exotic" women like Ms. Morgan, who was raised in the U.S. Virgin Islands.

8. In or around July of 2019, Loche was promoted to the position of Director, and he immediately began butting heads with Ms. Morgan. He complained that when he was the Assistant Director, she had not "trained" him in the areas of her responsibility, including compliance, costs accounting, and financial allocations. She explained that at the time he was not her supervisor, but now that her duties fell under him, she would be happy to answer any questions he may have.

9. Instead of doing so, Loche began marginalizing Ms. Morgan's role and interfering with her ability to do her job. Another financial manager, Amy Coates, whose duties did not include or overlap with Ms. Morgan's, was tasked with attending financial meetings previously attended by Ms. Morgan and to address issues that fell under Ms. Morgan's responsibilities. Loche consistently excluded Ms. Morgan from meetings that were essential to her ability to perform her job duties.

10. At the same time, Loche micromanaged Ms. Morgan's work by assigning her menial tasks outside of her regular job duties, such as monitoring other employees to make sure that they were at their desks at 8 a.m. and inquiring into office gossip.

11. During this same time period, Ms. Morgan heard Mr. Loche complaining about another female employee and saying that he didn't like working with "strong, pushy women." Shortly thereafter, he removed the HR liaison duties from that employee, a Black female, and assigned them to a white female with no prior HR experience. In December 2019 he also stated to two other employees that he did not like "black women who wear wigs."

12. On November 26, 2019, Ms. Morgan sent Mr. Loche an email asking for clarification of her job duties and complaining about being kept out of the loop and excluded from meetings. Mr. Loche responded angrily, and the next day announced a "restructuring" in the department ostensibly due to the need to service more internal customers at some time in the future. As a result of the restructuring, Ms. Morgan retained her job title, but her tasks were replaced with primarily transactional work (essentially AP/AR processing), which Ms. Morgan properly viewed as a step back from her then-current work, which was more analytical in nature. Her supervisory duties were shifted so that she was supervising multiple entry-level employees and student workers, whereas previously she had been a mid-level manager with a financial analyst who reported to her. Finally, Ms. Morgan's compliance responsibilities were reassigned by Mr. Loche to a white female (Ms. Morgan's subordinate) who had minimal experience in the area of compliance.

13. Ms. Morgan spoke to the Controller, John McCall, about the proposed reorganization and he initially assured her that she would not be forced to take a diminished position. He subsequently reversed his position.

14. On or about January 10, 2020, TAMU informed Ms. Morgan that she could accept the new position or be terminated. Ms. Morgan was thus forced to accept the position on January 13. During this process, Loche asked whether she would later answer questions about her prior subject matter expertise (\compliance), and she told him that it would be inappropriate, since he was assigning that responsibility to someone else. The

issue was left open, but Ms. Morgan did not agree to train her replacement. Loche knew or should have known that such a request would be demeaning and humiliating to Ms. Morgan after she had those duties involuntarily taken from her.

15. On January 15, 2020, Ms. Morgan filed her Charge of Discrimination with the U.S. Equal Employment Opportunity Commission. Alleging sex, race, and age discrimination.

16. Upon taking the new position, Ms. Morgan learned that the reorganization was significantly premature, as the customer service program, a "ticketing" system, for which she would be responsible would not be implemented for another 12-18 months. Despite all of this, Ms. Morgan threw herself into the new position with the determination to contribute as much as she could to her new duties. On the one occasion when her former direct report came to her with a question posed by an auditor, Ms. Morgan answered her question. There was never a time that she refused to answer questions.

17. However, as soon as Ms. Morgan began performing her new duties, she was placed under heightened scrutiny by Mr. Loche, who questioned her decisions and magnified minor issues. On a regular basis he would mention the EEOC complaint to her, but then refuse to discuss it. His hostility towards Ms. Morgan as a result of the Charge of Discrimination became starkly evident on January 30, 2020, during a meeting between Mr. Loche and Ms. Morgan regarding yet another change in responsibilities. An HR representative was present for the meeting, and Mr. Loche stated that HR was there because he didn't trust Ms. Morgan and because she had personally attacked him and questioned his character by complaining to the EEOC.

18. As further retaliation, upon information and belief, Mr. Loche approached HR regarding denying flex time to Ms. Morgan, who was recently divorced and needed to be in Houston on Fridays as part of the custody arrangement for her child. Upon information and belief, HR advised Mr. Loche that he could not make a change that would affect only Ms. Morgan, so he elected to eliminate flex time from the department as a whole, knowing tht the decision would have the greatest impact on Ms. Morgan.

19. On March 2, 2020, Mr. Loche abruptly terminated Ms. Morgan's employment, offering no reason for the decision. Mr. Loche had never given Ms. Morgan a performance review or issued any type of discipline to her prior to the termination. Later, in a conversation with HR, Ms. Morgan was told that she was terminated for insubordination for refusing to answer a subordinate's question, which was not true. In a subsequent e-mail, TAMU added to the reasons for termination that Ms. Morgan was creating a "toxic work environment," which Plaintiff contends was a dog-whistle for retaliation for engaging in protected activity.

20. Ms. Morgan appealed her termination internally, but to no avail. She contacted the EEOC again and was asked to complete an Intake form for her claim of retaliatory discharge. She did so, and the EEOC added that complaint to the scope of the existing investigation.

21. The EEOC issued a Notice of Right to Sue on June 29, 2021. This Complaint is being filed within ninety (90) days of Ms. Morgan's receipt of that Notice.

## IV. CAUSES OF ACTION

### A. <u>Race Discrimination—Title VII</u>

22. Plaintiff re-alleges and incorporates Paragraphs 1-21 herein by reference as if set out in full.

23. Ms. Morgan was at all relevant times employed by TAMU, and at all relevant times TAMU was an "employer" as defined under Title VII of the 1964 Civil Rights Act.

24. TAMU discriminated against Ms. Morgan in the terms and conditions of her employment because of her race and color, Black, culminating in the termination of her employment.

25. As a result of Defendant's unlawful conduct, Plaintiff has suffered damages, the recovery of which she seeks herein.

26. Plaintiff has been required to retain the undersigned counsel in order to assert her rights under Title VII of the 1964 Civil Rights Act and therefore is entitled to recover her reasonable and necessary attorney's fees.

### B. <u>Sex Discrimination: Title VII</u>

27. Plaintiff re-alleges and incorporates Paragraphs 1-26 herein by reference as if set out in full.

28. Ms. Morgan was at all relevant times employed by TAMU, and at all relevant times TAMU was an "employer" as defined under Title VII of the 1964 Civil Rights Act.

29. TAMU discriminated against Ms. Morgan in the terms and conditions of her employment because of her sex, female, culminating in the termination of her employment.

30. As a result of Defendant's unlawful conduct, Plaintiff has suffered damages, the recovery of which she seeks herein.

31. Plaintiff has been required to retain the undersigned counsel in order to assert her rights under Title VII of the 1964 Civil rights Act and therefore is entitled to recover her reasonable and necessary attorney's fees.

### C. Retaliation:  Title VII

32. Plaintiff re-alleges and incorporates Paragraphs 1-31 herein by reference as if set out in full.

33. Ms. Morgan engaged in protected activity under Title VII of the 1964 Civil rights Act by complaining of race and sex harassment both internally and by filing a Charge of Discrimination with the EEOC.

34. TAMU discriminated against and terminated Ms. Morgan in retaliation for her having engaged in such protected activity.

35. Plaintiff has been required to retain the undersigned counsel in order to assert her rights under Title VII of the 1964 Civil rights Act and therefore is entitled to recover her reasonable and necessary attorney's fees.

### V.     JURY DEMAND

36. Plaintiff requests a trial by jury.

## V. PRAYER

WHEREFORE, Plaintiff Cherise Morgan requests that the Court enter judgment in her favor and order that she recover from Texas A&M University the following:

1. Actual damages;

2. Compensatory damages;

3. Costs of court;

4. Reasonable and necessary attorney's fees;

5. Pre- and post-judgment interest at the highest rate permitted by law; and

6. Any additional relief to which the Court finds Plaintiff justly entitled.

Respectfully submitted,

/s/R.S. Ghio

R.S. Ghio
Texas State Bar No. 00787531
**DISMUKE & WATERS, P.C.**
2000 E. Lamar Blvd, Ste. 500
Arlington, Texas 76006
Tel.: 817-277-2077
rghio@dw-law.com
ATTORNEY FOR PLAINTIFF